# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 21-1407V

|  |  |
|---|---|
| BRUCE A. ADES, | Chief Special Master Corcoran |
| Petitioner, | Filed: November 13, 2023 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Bradley S. Freedberg, Bradley S. Freedberg, P.C., Denver, CO, for Petitioner.*

*Katherine Carr Esposito, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION ON ATTORNEY'S FEES AND COSTS[1]

On May 28, 2021, Bruce A. Ades filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that he suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, after receiving the influenza ("flu") vaccine on October 4, 2018. Amended Petition[3] at 1, ¶ 2.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] On May 9, 2022, Petitioner filed an amended petition, including only minor corrections. ECF No. 20. Although the filing date for the original petition is sometimes referenced, all citations will be to the amended petition.

On May 5, 2023, Respondent filed his Rule 4(c) Report, opposing compensation. ECF No. 32. Thereafter, Petitioner filed a joint stipulation pursuant to Vaccine Rule 21(a) (ECF No. 33), and I issued an order concluding proceedings on July 17, 2023. (ECF No. 37).

On June 29, 2023, Petitioner filed a request for an attorney's fees award of $39,940.61 ($39,512.25 in fees and $428.36 in costs). Petitioner's Application for Attorneys' Fees at 2, ECF No. 34. Asserting that the chief deficiency in his vaccine claim was his primary care provider's ("PCP's") failure to memorialize his initial complaint of vaccine-related pain in the medical records, Petitioner insists the claim nevertheless possesses the good faith and reasonable basis required for fees in unsuccessful cases. *Id.* at 2-3; *see* Section 15(e)(1) (statutory requirement of good faith and reasonable basis before a special master may award attorney's fees and costs).

Respondent reacted to Petitioner's motion on July 13, 2023, denying reasonable basis can be established herein. Respondent's Opposition to Motion for Attorneys' Fees and Expenses ("Opp.") at 1, ECF No. 35. Characterizing Petitioner's allegations as internally inconsistent and changing over time, Respondent contends Petitioner has failed to provide sufficient evidence to meet even the lower standard required for reasonable basis of the immediate pain onset and the six-months severity he describes. *Id.* at 15-18. He also maintains that the affidavits provided by Petitioner should be afforded little evidentiary weight because they "conflict with . . . contemporaneous medical records, and the affidavits were also created in the context of litigation." *Id.* at 18.

Two days later, Petitioner filed a reply, reiterating his assertions related to pain onset. Reply to Opp., filed July 15, 2023, ECF No. 36. As in his initial motion, however, he failed to mention other issues such as the lack of evidence related to the Vaccine Act's severity requirement. *Id.*; *see* Section 11(c)(1)(D)(i) (statutory six-month severity requirement). Most importantly, Petitioner failed to address discrepancies between his initial complaints and the symptoms he reported several years later, shortly before the Petition was filed.

For the reasons discussed below, Petitioner has failed to establish there was a reasonable basis for his claim. Thus, he is not entitled to an award of attorney's fees and costs, and the fees motion is denied.

## I.   Applicable Legal Standards

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in*

1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (2012). Indeed, it may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs to an unsuccessful claimant only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases – but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries, but only reasonable basis is at issue herein.[4] Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Cottingham I"). "The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.,* 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must

---

[4] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

furnish some evidence in support of the claim.'" *Id.* Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) (*"Cottingham II")*. "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. The reasonable basis which existed when a claim was filed may cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

## II.    Analysis

The medical records reveal that Petitioner (63 years old) received the flu vaccine alleged as causal on October 4, 2018.[5] Exhibit 5 at 1. Although he visited his PCP for a preventative health visit on October 15, 2018 (eleven days later), there is no mention of left shoulder pain or a vaccine reaction in this medical record. Exhibit 2 at 27-31. Nor is there any mention of a vaccine reaction during several visits to the dermatologist and phone calls with his PCP in 2019. Exhibit 1 at 43-44, 3-5 (dermatology visits on January 28 and August 12, 2019, respectively); Exhibit 2 at 21-22 (PCP calls on October 16 and November 19, 2019).

In his supplemental affidavit, Petitioner claimed that he immediately called the pharmacist who administered the October 4th vaccination and his PCP's clinic, but he failed to provide any evidence of these calls. Exhibit 14 at 1. However, he did provide phone records showing only a 17 second call to the PCP clinic at 6:16pm on October 11, 2018. Exhibit 13. Although this phone record provides *some* support for the claims of Petitioner and his wife, the value of this support is weakened by several factors. Exhibit 12 at 1-3 (affidavits from Petitioner and his wife, executed on March 10, 2022, and filed in the same exhibit). Given the short duration of the call, it is unlikely that Petitioner's recollection of a substantive discussion which included being placed on hold while the

---

[5] Although the date of vaccination in Petitioner's PCP medical records is later listed as October 8, 2018, this appears to be a simple mistake. *See* Exhibit 2 at 28.

nurse contacted the PCP is accurate. *Compare* Exhibit 13 (showing call duration) *with* Exhibit 12 at 3 (Petitioner's description of the call). Additionally, the lack of any medical record related to the call or mention of vaccine-related symptoms in the record from the subsequent October 15th appointment makes it difficult to ascertain whether the symptom descriptions later recounted by Petitioner and his wife are accurate. At most, the record supports the premise that Petitioner suffered an immediate, albeit temporary, reaction which his PCP did not find concerning. And it would be reasonable to accept that Petitioner suffered the common vaccine side effects (temporary pain, redness, a rash, and swelling) described in his and his wife's affidavits. Exhibit 12 at 1-3.

As evidenced by the Vaccine Adverse Event Report or VAERS form he completed in November 2018,[6] Petitioner believed that the flu vaccine also caused him to suffer severe, but generalized, weakness, *primarily in the quadriceps*, resulting in a need to push off a table or other item to stand. Exhibit 11 at 1 (final VAERS form listing symptoms of asthenia,[7] dysstasia,[8] injection site pain, and muscular weakness). He insisted this weakness caused him to suffer a fall several weeks post-vaccination that resulted in fractures in several toes. *See,* e.g., Exhibit 2 at 64 (history provided in May 2021). Although Petitioner initially claimed to have visited the emergency room for this injury, he later clarified that he only called, but did not visit, the emergency. *Compare* Amended Petition at ¶ 3 *with* Exhibit 2 at 64. Thus, despite being timely raised, the proposed casual connection is supported only by Petitioner's personal belief. The record contains *no* evidence linking this generalized weakness to the flu vaccine he received.

The first mention an adverse vaccine reaction in the contemporaneously created medical records occurs in early 2020 – over two years post-vaccination - when Petitioner reported "no HAs[9]", followed by "had a reaction to flu shot in 2018" during a physical conducted on January 9, 2020. Exhibit 2 at 16. The medical record from his next visit on January 16, 2020, indicates only "FLU VACCINE (SEVERE)" under a list of allergies. *Id.* at 7. Both entries fail to provide a description of the vaccine reaction and appear to be

---

[6] There is some confusion surrounding this report, specifically a question whether the report was revised at some time. Respondent noted that Petitioner referenced a preliminary report filed two to three weeks earlier on November 11, 2018, with a different identification number (#156472) in the initial Petition. Opp. at 6 n.2; *see* Petition at ¶ 4. In his amended petition, Petitioner explained that the first identification number cited was temporary, and that, after finalized the report received a permanent number (0788556-1). Amended Petition at ¶ 4. Even if the report was revised later in November to include the generalized muscle weakness Petitioner believes was vaccine-related, my analysis in this case is not affected.

[7] Asthenia is the "lack or loss of strength and energy." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY ("DORLAND'S") at 168 (32[th] ed. 2012).

[8] Dysstasia is "difficulty in standing." DORLAND'S at 582.

[9] This entry likely means no hospitalizations or no headaches, two of the most common uses for this abbreviation. MEDICAL ABBREVIATIONS at 259 (16th ed. 2020).

describing past events. Furthermore, Petitioner did not seek treatment for, or even report, any ongoing symptoms. Additionally, both Petitioner and his wife admit that his initial symptoms of redness and a rash improved shortly post-vaccination. Exhibit 2 at 64 (history provided by Petitioner in 2021); Exhibit 12 at 1-2 (affidavit of Petitioner's wife).

Petitioner thereafter did not mention symptoms more typical of a SIRVA injury, or seek treatment, until 31 months post-vaccination on May 21, 2021. At that visit, he reported a rash and hives which lasted for three to four days, an inability to raise his arms overhead, and a fall downstairs that he suffered three weeks post-vaccination. Exhibit 2 at 64. Adding that all his joints had become more painful since his fall, Petitioner sought testing for rheumatoid arthritis and autoimmune issues. *Id.* By the time he filed the Petition on May 28, 2021, Petitioner's described symptoms had further morphed into chronic shoulder pain, a gradual loss of arm mobility, tingling and numbness in his hands and feet, and weakness in his arms and legs. Amended Petition at 2-3.

The record in this case contains *some* evidence to support the assertion that Petitioner suffered an immediate reaction involving a rash, hives, swelling, and redness post-vaccination. However, there is a significant lack of evidence showing Petitioner suffered additional vaccine-related symptoms (generalized muscle weakness – specifically in his legs) which Petitioner believes caused him to fall, injuring his toes, three weeks later. And there is *no* evidence connecting the more typical SIRVA symptoms Petitioner first reported more than 31 months post-vaccination.

This absence of evidence supporting vaccine-related sequelae lasting for more than six months, needed to satisfy the Vaccine Act's severity requirement, constitutes a lack of reasonable basis to have filed or continue this claim. The case lacked objective reasonable basis on this element of the claim from the start, thus prohibiting an award of fees.

### Conclusion

The Vaccine Act permits an award of reasonable attorneys' fees and costs even to an unsuccessful litigant as long as the litigant establishes the Petition was brought in good faith and there was a reasonable basis for the claim for which the Petition was brought. Section 15(e)(1). But Petitioner has failed to provide evidence establishing there was a reasonable basis for filing his claim. **Petitioner's motion for attorney's fees and costs is therefore <u>DENIED.</u>**

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[10]

**IT IS SO ORDERED.**

> **s/Brian H. Corcoran**
> Brian H. Corcoran
> Chief Special Master

---

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.